IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARVEL JOHNSON | : | |
| *Petitioners-Plaintiffs,* | : | |
| | : | |
| v. | : | |
| | : | |
| PATRICIA H. HYDE, Boston Field Office, | : | |
| Acting Director, | : | Civil Action No. 3:25 CV25-00377 |
| Immigrations and Customs Enforcement in his | : | |
| Official Capacity | : | |
| TODD LYONS, Acting Director, | : | |
| Immigrations and Customs Enforcement in his | : | |
| Official Capacity | : | |
| KRISTI NOEM, Secretary, | : | March 15, 2025 |
| Department of Homeland Security, | : | |
| in his Official Capacity | : | |
| GARRETT RIPA | : | NON-JURY |
| Acting Executive Associate Director, Enforcement | : | |
| and Removal Operations | : | |
| *Respondents-Defendants.* | : | |
| _____ | : | |

PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C.§ 2241
DECLARATORY AND INJUNCTIVE RELIEF

INTRODUCTION

1.     Plaintiff, Marvel Johnson is a 53-year-old native, and citizen

of Jamaica currently detained at the Department of Homeland Security,

Immigration Customs Enforcement's (DHS-ICE) offices at 450 Main Street,

Hartford, Connecticut ("450 Main Street") since March 13, 2025. On March

14, 2025, DHS-ICE transported Mr. Johnson to the Emergency Room at

Hartford Hospital because he did not have access to his prescription

medications related to his end-stage renal failure. The visit notes from

Hartford Hospital indicated that: "Due to his immunocompromise state

patient requires an environment to reduce risk of communicable diseases." It is believed that DHS-ICE does not have a facility able to care for Mr. Johnson's medical condition. As of the date of this filing, Mr. Johnson is believed to still be held in a temporary holding cell, without a bed, at 450 Main Street. For this reason, a writ of habeas corpus pursuant to 8 U.S.C.§ 2241 is sought on an emergency basis to protect him from death or serious physical injury. There are no exhaustion requirements under 28 U.S.C. § 2241.

PARTIES

2.      The plaintiff-petitioner, <u>Marvel Johnson</u>, is a 53-year-old male who suffers from end-stage renal disease secondary to hypertension who received a deceased donor kidney transplant on January 23, 2009. He also has severe sleep apnea.

3.      Respondent-Defendant <u>Patricia H. Hyde</u> is sued in her official capacity as the acting Boston Field Office Director for U.S. Immigration and Customs Enforcement. She has responsibility for and authority over the detention and removal of noncitizens within the Boston Region, which includes Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island, and Vermont.

4.      Respondent-Defendant <u>Todd Lyons</u> is named in his official capacity as the acting Secretary of the U.S. Department of Homeland Security. Defendant Lyons is responsible for enforcing federal laws concerning, for

example, border control and immigration, including the INA provisions at issue in this case. Defendant Lyons has direct authority over ICE, which is responsible for the civil detention of immigrants in the United States.

5.    Respondent-Defendant Garrett Ripa is named in her official capacity as the Acting Associate Director and Senior Official Performing Duties of the Director for ICE. Defendant Ripa oversees civil detention of immigrants in the United States

VENUE

6.    Venue in the District Court for the District of Connecticut is proper under 28 U.S.C. § 1391(b) because the Federal Respondents-Defendants (hereinafter, "Defendants") are administering Mr. Johnson's detention and custody decision in this District at its DHS-ICE Office at 450 Main Street and Mr. Johson is being physically detained there as of today, March 15, 2025.

JURISDICTION

7.    Mr. Johnson resides in the State of Connecticut and his administrative removal is being managed by the DHS-ICE Enforcement and Removal Office (ERO), within the jurisdiction of this Court.

8.    This case arises under the Fifth Amendment to the United States Constitution and the Rehabilitation Act, 29 U.S.C. § 794(a).

9.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1346, 2201-02, and § 2241, and Article 1, Section 9, clause 2 of the United States Constitution.

10.    The United States has waived sovereign immunity for this action for declaratory and injunctive relief against one of its agencies and that agency's officers are sued in their official capacities. *See* 5 U.S.C. § 702.

FACTS

11.    Prior to March 13, 2025, Mr. Johnson had been under an order of supervision pending his final removal from the United States.

12.    Prior to March 13, 2025, Mr. Johnson had complied with conditions of his supervised release, which also allowed him to continue critical medical care for his multiple, life-threatening health conditions.

13.    DHS-ICE has significant discretion to release immigration detainees, *see* 8 U.S.C.§1226(a), and has a long-standing practice of releasing for humanitarian reasons even those whose detention has been mandated under particular immigration detention statutes, *see* 8 U.S.C.§§1182(d)(5); 1225(b); 1226(c).

14.    As reported in Mr. Johnson's medical records from his March 3, 2025, medical appointment: "Marvel G Johnson is a 53 y.o. male with end-stage renal disease secondary to hypertension who received a deceased donor kidney transplant on 1/23/2009. The patient's baseline creatinine has been in the range of 1.7 to 2.0. The most recent creatinine is 5.95." Normal for men of Mr. Johnson's age is 0.7 to 1.3 mg/dl. In December 2024, Mr. Johnson was admitted with hyperkalemia and found "to have hypertensive emergency and acute renal failure (creatinine 13.2 mg/dL on presentation)." He receives dialysis three times a week in order to continue living.

15.     Mr. Johnson is not being detained pursuant to a conviction. Rather, he is in civil detention awaiting removal. DHS-ICE has significant discretion to release immigration detainees, *see* 8 U.S.C.§1226(a), and has a long-standing practice of releasing for humanitarian reasons even those whose detention has been mandated under particular immigration detention statutes, *see* 8 U.S.C.§§1182(d)(5); 1225(b); 1226(c).

16.     DHS-ICE regularly uses alternatives to detention to maintain custody and control over non-citizens in immigration proceedings, such as supervised release, electronic ankle monitors, home confinement, and telephonic monitoring.

17.     Several recent court rulings from during the COVID 19 pandemic have explained the health risks—to inmates, guards, and the outside community at large—created by large prison populations. *See, e.g., Jimenez v. Wolf*, No. 18-10225-MLW (D. Mass. Mar. 26, 2020) (ordering release of immigrant detainee in the midst of the COVID-19 pandemic and noting that "being in a jail enhances risk" and that in jail "social distancing is difficult or impossible"); *United States v. Stephens*, No. 15-cr-95-AJN, 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020) (ordering the release of inmate in Federal Bureau of Prisons custody due, in part, to risk posed by COVID-19 in the facility); *In the Matter of the Extradition of Alejandro Toledo Manrique*, Case No. 19-mj-71055, 2020 WL 1307109, at *1 (N. D. Cal. March 19, 2020) (ordering change to conditions of bail for an individual to postpone

incarceration, in part in light of risk of vulnerability to the coronavirus) *United States v. Barkman*, No. 3:19-cr-0052-RCJ-WGC, 2020 U.S. Dist. LEXIS 45628 (D. Nev. Mar. 17, 2020). On March 22 the New Jersey Supreme Court issued a consent order for the presumptive release of approximately 1,000 persons by March 26.

18.    If further detained, Mr. Johnson is at risk of death or serious physical injury from inadequate treatment and management of his end-stage renal failure and his immunocompromise state.

19.    Mr. Johnson's recent medical history is self-explanatory as to why it is unlikely that the Defendants will be able to manage his multiple critical conditions. For instance, in:

A.    January 23, 2009: Mr. Johnson received a deceased donor kidney transplant.

B.    January 23, 2009: Mr. Johnson's kidney transplant was performed.

C.    March 20, 2017: Mr. Johnson was diagnosed with essential hypertension.

D.    May 15, 2019: Mr. Johnson was diagnosed with gastroesophageal reflux disease (GERD) without esophagitis and secondary renal hyperparathyroidism.

E.      February 14, 2022: Mr. Johnson's estimated Glomerular Filtration Rate ("eGFR) was measured at 46 and 54 and indicative of poor kidney filtration.

F.      February 26, 2024 - March 3, 2024: Mr. Johnson was admitted to Hartford Hospital with acute kidney injury, hyponatremia, urinary obstruction, pyelonephritis, and gram-positive bacteremia.

G.      February 29, 2024: Cefepime was stopped and switched to Vantin 100 mg p.o. twice daily x 7 days.

H.      March 1, 2024: Vancomycin was stopped.

I.      March 21, 2024: Mr. Johnson had a follow-up appointment with Dr. J_____ K_____ for urology, with a postvoid residual of 22 mL.

J.      December 16, 2024: Mr. Johnson's urinalysis showed moderate protein and negative blood.

L.      December 16, 2024 - December 24, 2024: Mr. Johnson was admitted to the hospital with hyperkalemia, hypertensive emergency, and acute renal failure (creatinine 13.2 mg/dL).

M.      December 23, 2024: Mr. Johnson underwent a right renal biopsy.

N.      December 23, 2024: A percutaneous kidney biopsy was performed.

O.      January 20, 2025: Mr. Johnson visited the Yale emergency department for hemoglobin below 7 g/dL and received 1 unit of PRBCs.

P.      February 24, 2025: Mr. Johnson had a sleep study done that showed severe obstructive sleep apnea with AHI of 68.2, lowest saturation of 69%, and a mean of 92%.

Q.      March 3, 2025: Mr. Johnson was seen by Dr. J_____ L _____ for a post-kidney transplant follow-up.

R.      March 6, 2025: Mr. Johnson was evaluated by Dr. M_____ G_____ for maintenance insomnia, excessive snoring, and witnessed apneas.

S.      March 13, 2025: Mr. Johnson was seen in the Hartford Hospital Emergency Department for a missed medication dose due to his detention by the Defendants and received his medications.

20.     Mr. Johnson's critical medical appointments also require that he attend the immediately following appointments with his medical doctors at Hartford Healthcare:

A.      March 24, 2025: Mr. Johnson has an upcoming kidney pre-class appointment with Nurse A_____ H_____.

B.      March 26, 2025: Marvel Johnson has an upcoming sleep study lab appointment.

C.      March 27, 2025: Marvel Johnson has an upcoming follow-up appointment with Dr. L_____ Z_____.

D.      April 10, 2025: Marvel Johnson has an upcoming follow-up appointment with Dr. M_____ G_____.

     E.      April 17, 2025: Marvel Johnson has an upcoming follow-up appointment with Dr. J_____ K_____ for urology.

     F.      April 24, 2025: Marvel Johnson has an upcoming CPAP appointment.

     G.      May 15, 2025: Marvel Johnson has an upcoming follow-up appointment with Dr. M_____ G_____.

     H.      September 8, 2025: Marvel Johnson has an upcoming kidney post-transplant follow-up appointment with Dr. J_____ S_____

21.     As of the date of this petition's filing, Saturday, March 15, 2025, Mr. Johnson is believed to be sitting in a holding cell at 450 Main Street, which does not have a mattress for sleeping and he has been unable to sleep since March 13, 2025.

22.     The lack of adequate sleep, including access to his medically required CPAP machine, is detrimental to his physical health and overall wellbeing.

CLAIMS FOR RELIEF

Count 1
*Issuance of a Writ of Habeas Corpus Relief*

23.     Mr. Johnson realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

24.     Mr. Johnson's detention serves no legitimate regulatory purpose and is not narrowly tailored so as to not be excessive in relation to its

purpose or reasonably calculated to effectuate his removal from the United States.

25.    Supervised release is sufficient and appropriate for someone with Mr. Johnson's significant medical conditions and where DHS-ICE cannot provide adequate medical treatment or care during Mr. Johnson's confinement.

26.    Incarceration is an unduly burdensome and unnecessary policy for the administrative removal of someone like Mr. Johnson, particularly because of his compromised immune system – even if Defendants could find a detention facility with adequate medical support.

27.    Mr. Johnson seeks the issuance of a Writ of Habeas Corpus ordering his immediate release from detention and to supervised release.

Count II
(*Violation of Fifth Amendment Right to Due Process--Unlawful Punishment; Freedom from Cruel Treatment and Conditions of Confinement.*)

28.    Mr. Johnson realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

29.    The Fifth Amendment to the U.S. Constitution guarantees that civil detainees, including all immigrant detainees, may not be subjected to punishment. The government violates this substantive due process right when it subjects civil detainees to treatment and conditions of confinement that amount to punishment or does not ensure the detainees' safety and health.

30.    Defendants have subjected Mr. Johnson to conditions of confinement that include the imminent risk of renal failure or further renal complications, exposure to illness in relation to his compromised immune system, medical complications, inadequate sleep and the assistance of his CPAP machine.

31.    Defendants are subjecting Mr. Johnson to imminent risk of physical, emotional and mental harm in violation of his rights under the Due Process Clause of the Fifth Amendment.

32.    Defendants cannot justify continuing to subject Mr. Johnson to extraordinary risk of illness and death with any legitimate government objective, particularly in light of the alternatives available to them to maintain custody and control over Mr. Johnson and effectuate his removal from the United States.

33.    The danger posed by Mr. Johnson's detention given his multiple life-threatening conditions is "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk" and violates his constitutional right to safety in government custody. *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

34.    Mr. Johnson brings this action to remedy grave violations of his constitutional rights that imminently threaten him with serious illness and death.

35.     Objectively, Mr. Johnson is incarcerated under conditions posing a substantial risk of serious harm in that there are no medical facilities at 450 Main Street, and they cannot even offer him a place to sleep.

36.     The Defendants know of Mr. Johnson's medical conditions from having transported him the Hartford Hospital Emergency Room and reasonably therefore should have been informed of the critical care needed to maintain his health and life.

37.     The Defendants have not provided Mr. Johnson with conditions for him to receive adequate rest for more than three days by holding him a temporary holding cell without a mattress for sleeping, despite knowing (or reasonably should know as his custodian) that he suffers from a severe sleep disorder.

38.     The failure to release Mr. Johnson back to his prior status of supervised release is subjectively reckless given the totality his medical condition as hereinabove alleged.

39.     The Defendants should appreciate and draw a reasonable inference from the fact that Mr. Johnson is at substantial risk of bodily injury or harm from kidney failure if he is not immediately released.

40.     No reasonable agent of the Defendants would want to be responsible for the extreme risk to Mr. Johnson's life and health caused by his continued detention at 450 Main Street.

*Count III*
*(Violation of the Rehabilitation Act –*
*Failure to Provide Reasonable Accommodation*
*to Persons with Disabilities)*

41.     Section 504 of the Rehabilitation Act requires federal agencies to provide "reasonable accommodations" to individuals with disabilities so they can fully participate in benefits administered by these agencies. 29 U.S.C. § 794(a).

42.     DHS regulations implementing the Rehabilitation Act mandate that "[n]o qualified individual with a disability in the United States, shall, by reason of his or her disability, be excluded from participation in, be denied benefits of, or otherwise be subjected to discrimination under any program or activity conducted by the Department." 6 C.F.R. § 15.30; see also 29 U.S.C. § 794(a).

43.     The regulations implementing Section 504 prohibit entities receiving federal financial assistance from utilizing "criteria or methods of administration (i) that have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap, (ii) that have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the recipient's program or activity with respect to handicapped persons." 34 C.F.R. § 104.4(b)(4).

44.     Mr. Johnson meets the definition of a handicapped person.

45.     Removal and post-removal proceedings are a benefit or program administered by DHS-ICE and Mr. Johnson is entitled to participate in them.

46.     The services, programs, and activities within the detention centers where DHS-ICE detains Immigrants such as Mr. Johnson receive substantial federal financial assistance.

47.     Mr. Johnson's underlying medical conditions, qualify as disabilities for purposes of the Rehabilitation Act. 29 U.S.C. § 705(2)(B); 42 U.S.C. § 12102.

PRAYER FOR RELIEF

The Petitioner-Plaintiff, Marvel Johnson respectfully request this Court to:

1.     Issue a Writ of Habeas Corpus and order the immediate release of Marvel Johnson or placement in community-based alternatives to detention such as conditional or supervised release, with appropriate precautionary health measures, on the ground that his continued detention violates the Due Process Clause and/or violates the Rehabilitation Act;

2.     In in addition to or in the alternative, the Court is moved to issue injunctive relief ordering the immediate release of Marvel Johnson;

3.     Declare that Defendants' detention of Marvel Johnson is unconstitutional in violation of the Fifth Amendment as well as the Rehabilitation Act;

4.      Award Marvel Johnson costs and reasonable attorneys' fees under The Equal Access to Justice Act (EAJA) 5 U.S.C. § 504; 28 U.S.C. § 2412; and

5.      Grant such further relief as the Court deems justice to require.

Respectfully Submitted,

/s/*Glenn L Formica*

_____
Glenn L. Formica, Fed. Bar. No 21053
Formica, P.C.
195 Church Street, Floor 11
New Haven, Connecticut 06510
(203) 787-1946
(203) 787-6766
e-mail: gformica@formicalaw.com